**Haisam F. MANSOUR and, Nahla Mansour, His Wife, Appellees**

v.

**Bhattarahally Y. LINGANNA, M.D., Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 3, 2001.

Filed Nov. 15, 2001.

Leo M. Stepanian, Butler, for appellant.

Lee Ann Fulena, New Castle, for appellee.

Before: DEL SOLE, President Judge, LALLY–GREEN and TAMILIA, JJ.

TAMILIA, J.

¶ 1 Bhattarahally Y. Linganna, M.D., appeals from the February 1, 2001 judgment entered in favor of appellees, the Mansours. Appellees initiated this personal injury action following an automobile accident in which appellant's vehicle struck appellee/husband's vehicle head on.

¶ 2 Appellant admitted liability and a partial directed verdict was entered in favor of appellees. With respect to damages, however, there existed a dispute as to whether the injuries for which appellees were seeking damages were caused by the November 7, 1994 accident. The evidence revealed that appellee/husband was involved in a number of prior accidents producing injuries similar to those he claims to have sustained in the November 7, 1994 accident.

¶ 3 The jury, finding appellant's negligent conduct was a substantial factor in

bringing about injuries to appellee/husband's head, face, hand, chest and cervical spine, awarded damages in the amount of $70,000. Thereafter, delay damages were added and the verdict was molded, for a total verdict of $85,008.29. Appellant's motion for post-trial relief was denied, judgment was entered and this appeal followed.

¶ 4 Appellant raises five issues on appeal.

I. Did the lower court commit error by permitting [appellees],[1] during the trial, to take a telephone deposition of [appellees'] expert witness for the purpose of establishing damages even though [appellant] had no opportunity to obtain expert rebuttal evidence and even though counsel for [appellees] had previously waived those damages?

II. Did the lower court commit error by injecting itself into the trial as an advocate for [appellees] by questioning [appellees'] expert witness during a telephone deposition by asking questions in order for [appellee] to establish part of the damage portion of [their] case?

III. Did the lower court commit error by redacting and refusing certain testimony of [appellant's] expert witness pertaining to [appellee/husband's] drug use which was [appellant's] only available rebuttal testimony to combat [appellees'] expert witness' surprise deposition testimony concerning [appellee/husband's] need for narcotic drugs and which would mitigate

[appellees'] claim of a permanent injury?

IV. Did the lower court commit an error by asking potential jurors during their voir dire whether they had heard of the "McDonald's verdict" and whether they felt it was ridiculous which questions did not pertain to the jurors' qualifications?

V. Did the lower court commit error by permitting [appellees'] counsel to state in his closing argument that this case was not a frivolous lawsuit and by not giving a curative instruction when [appellees'] counsel mentioned the McDonald's lawsuit which suggested to the jury that their verdict should be significant in amount?

(Appellant's brief at 3–4.)

■ ¶ 5 With respect to the first issue, we find the trial court did not err in permitting appellees to recall expert medical witness, Dr. Robert Gilliland, by telephone for the purpose of establishing appellee/husband's future medical expenses, relating to his prescription costs for Oxycontin.[2] Appellant argues he was unfairly surprised by the telephone testimony of Dr. Gilliland. We disagree.

¶ 6 Appellant's argument is based on what is known as the "fair scope rule". As explained by this Court,

The "fair scope rule" ... derives from our Rules of Civil Procedure governing discovery. Rule 4003.5 [**Discovery of Expert Testimony. Trial Preparation Material**] provides that a party may, during discovery, require his adversary

---

1. Appellant repeatedly refers to appellee/husband as the only appellee. We note that both appellee husband and appellee wife are parties to this case and thus properly referred to as "appellees".

2. The record reveals that Oxycontin is a medication prescribed for pain management.

to state the substance of the facts and opinions to which his or her expert is expected to testify and a summary of the grounds for each opinion. Pa.R.C.P. 4003.5(a)(1)(b). The purpose of this provision is to avoid unfair surprise by enabling the adversary to prepare a response to the expert testimony.

*Feden v. CONRAIL*, 746 A.2d 1158, 1161 (Pa.Super.2000) (internal quotations and citations omitted). Moreover,

> The experience of this Court ... has been that it is impossible to formulate a hard and fast rule for determining when a particular expert's testimony exceeds the fair scope of his or her pretrial report. Rather, the determination must be made with reference to the particular facts and circumstances of each case. The controlling principle which must guide us is whether the purpose of Rule 4003.5 is being served. The purpose of requiring a party to disclose, at his adversary's request, the substance of the facts and opinions to which the expert is expected to testify is to avoid unfair surprise by enabling the adversary to prepare a response to the expert testimony.
>
> In other words in deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word "fair." The question to be answered is whether under the circumstances of the case, the discrepancy between the expert's pretrial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response.

*Wilkes–Barre Iron & Wire Works, Inc. v. Pargas of Wilkes–Barre, Inc.*, 348 Pa.Super. 285, 502 A.2d 210, 212–213 (1985) (internal quotations and citations omitted.)

¶ 7 Accordingly, we look at the facts and circumstances of this case to determine whether appellant was unfairly surprised by the introduction of Dr. Gilliland's testimony via telephone regarding the necessity and reasonableness of appellee/husband's Oxycontin use. The interrogatories appellees answered for appellant indicate which pain medications appellee/husband was taking. Further, Dr. Gilliland testified Oxycontin was prescribed for appellee/husband. Appellant had ample time to cross-examine Dr. Gilliland regarding the prescription during the doctor's first deposition (N.T., 3/9/00, at 6–7). Further, appellant was made aware that appellee/husband was under Dr. Gilliland's care and receiving prescription pain medications through medical reports obtained by appellant during discovery. (Appellees' pretrial statement, Record # 14). Accordingly, given that the recall of Dr. Gilliland was for the limited purpose of establishing reasonable medical expenses as related to the Oxycontin prescriptions and that the pleadings previously referred to the prescribed pain medications, we find the telephonic deposition of Dr. Gilliland was proper in light of the "fair scope rule".

■ ¶ 8 Appellant next argues the trial court acted as an advocate for appellees by questioning appellees' expert witness during the telephone deposition.

> A trial judge has the right if not the duty to interrogate witnesses in order to clarify a disputed issue or vague evidence. Unless the complaining party can establish the judge's questioning constituted an abuse of discretion, resulting in discernable prejudice, capricious disbelief, or prejudgment, a new trial will not be granted.

*Tiburzio–Kelly v. Montgomery*, 452 Pa.Super. 158, 681 A.2d 757, 770 (1996) (citation omitted).

¶ 9 On direct examination, appellees' counsel asked,

Q. Doctor, is Oxycontin necessary and reasonable treatment for Haisam Mansour?

A. For his type of problem, it is the ideal or best treatment for him for pain control.

Q. Doctor, what is his prognosis relative to the receipt of the same prescription of Oxycontin into the future?

A. We have arrived at a level of medication which gives him comfort, so that we will continue into the future with the same medication without probably going up in dosage. He takes the other medications in supplement to the Oxycontin, but the main medication is the Oxycontin and it is a stable dose and will continue into the future.

(N.T., 3/9/00, at 3–4.) The trial judge then questioned Dr. Gilliland as follows:

Q. Doctor, how do we know this medication prescribed related to the accident of November 7, 1994?

A. The pain he had following that, and I have seen him, you know, many years back, even after that accident, and followed the pain profile that he has, and I have done many trigger point injections into his neck and back. So I have had on many occasions the opportunity of evaluating, examining his neck and back. So the pain that he has had is certainly related to the accident and certainly requires this medication.

(*Id.* at 6.)

¶ 10 After cross-examination, the trial judge asked,

Q. [T]his prescription or medication you prescribe, are you planning on prescribing that in the future to this patient?

A. Yes, sir, every month.

Q. For how long?

A. Indefinitely, as long as he has the chronic pain problem and his type of pain cannot be resolved, say, by surgery or by any other means. So, we are using this medication as a matter of pain control.

(*Id.* at 8.)

¶ 11 In this case, it was appellees' counsel who elicited testimony regarding the application, cost, reasonableness and necessity of the Oxycontin medication. The questions asked by the judge were merely for clarification purposes and do not constitute an abuse of discretion resulting in discernable prejudice. Accordingly, we find appellant's challenge of the court's limited questioning of Dr. Gilliland to be without merit.

¶ 12 Third, appellant argues the trial court erred in "redacting and refusing" those portions of the testimony of Dr. Michael Zernich regarding appellee/husband's history of chronic drug use. Husband's drug use, in Dr. Zernich's opinion, was a possible reason for his continued complaints of pain following the November 7, 1994 accident. Appellant asserts that "[b]ecause the jury could not consider Dr. Zernich's testimony relating to [husband's] use/need for the narcotic drug Oxycontin, the jury awarded [husband] $35,000 for further medical expenses." Appellant's brief at 27. According to appellant, therefore, the exclusion of the testimony affected the amount of the verdict and was a denial of his right to rebuttal.

¶ 13 In *Hutchison v. Luddy,* 763 A.2d 826 (Pa.Super.2000), this Court indicated,

The basic requisite for the admission of any evidence is that it be both competent and relevant.... It is the court's function to exclude any evidence which would divert attention from the primary issues in the case....

. . .

A trial court may properly exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury.

*Id.* at 838 (internal quotations and citations omitted).

¶ 14 In this case, the trial court redacted the portion of the doctor's testimony concerning appellee/husband's apparent past drug addiction. While the trial court specifically found the testimony to be probative as to the issue of whether husband's future medical expenses were related to the automobile accident, the court further concluded that the prejudicial effect of the doctor's testimony outweighed its probative value. The court also considered the possibility such evidence could have "confused and/or mislead the jury by broaching other unrelated issues, such as which particular medications or drugs [husband] was addicted to and whether they were similar to those prescribed for [husband's] injuries related to the collision in this case." (Trial Court Opinion, Pratt, P.J., 5/4/01, at 16.) As the decision to exclude that portion of Dr. Zernich's testimony regarding appellee/husband's past drug usage/addiction was within the discretion of the trial court and there was no abuse of that discretion, this challenge fails.

■ ¶ 15 Fourth, appellant argues the trial court erred in asking potential jurors the following question:

For those of you who have heard of the McDonald's verdict regarding the hot coffee for two and a half million dollars, the Court wants to know how many of you feel that that was a ridiculous case or that because of that case, something is wrong with the court system or that we need to do something to prevent verdicts like that?

(N.T., 3/6/99, at 75.) The trial court appears to have been making reference to the 1994 New Mexico case of *Liebeck v.*

*McDonald's Restaurants, P.T.S., Inc.,* (no published Opinion), in which a jury awarded a plaintiff nearly three million dollars in damages.

■ ¶ 16 Appellant argues the question constituted reversible error in that it permitted the jury to equate appellant with McDonald's and caused the jury to consider appellant's wealth when arriving at their verdict.

The purpose of the voir dire examination is to secure a competent, fair, impartial and unprejudiced jury. To achieve this goal the trial judge has broad discretion in determining the scope, manner and procedure of the voir dire examination, and his decisions will not be reversed in the absence of palpable error.

*Starr v. Allegheny General Hospital* 305 Pa.Super. 215, 451 A.2d 499, 501 (1982) (citations omitted.) Of the forty-five potential jurors, forty-three raised a hand following the court's question, which would indicate an affirmative response. These forty-three possible jurors, however, also indicated their feelings in this regard would not affect their ability to be impartial. The empaneled jury awarded appellees $70,000—approximately 2.4% of the McDonald's verdict. As there is no evidence the trial court's question caused a bias against appellant, we find no error.

■ ¶ 17 Finally, appellant argues the trial court erred by permitting appellees' counsel to state in his closing argument that the case was not a frivolous lawsuit, comparing it to the McDonald's lawsuit. In relevant part, counsel stated:

I think one of the questions was about the McDonald's case and how people felt about it with the hot coffee spill and everything else. This is not a frivolous lawsuit. This is not a frivolous accident. . . .

He had immediate complaints, immediate symptoms. This is not a frivolous

lawsuit. The amount of money we're asking you for, just the medical, that's the medical he has to spend on his way out.

(N.T., 3/10/00, 148–149.)

¶ 18 Appellant contends these remarks prejudiced him in that they created a bias in favor of appellees. We disagree. As indicated above, the amount of the verdict appears to negate the possibility that mention of the McDonald's suit served to bias the jury in favor of appellees. Further, upon review of the closing remarks, we find appellees' counsel was attempting to convey to the jury that, as the fact finder, they should use common sense to come to a just conclusion based upon the evidence presented.

¶ 19 It is well settled that the presentation of closing arguments and the decision to declare a mistrial with respect thereto is within the discretion of the trial court, "whose vantage point enables it to evaluate the climate of the courtroom and the effect on the jury of closing arguments." *Clark v. Philadelphia College of Osteopathic Medicine,* 693 A.2d 202, 206 (Pa.Super.1997) (citations omitted). "Furthermore, a new trial is not required where the remarks made by counsel were neither inflammatory or prejudicial." *Alexander v. Carlisle Corp.,* 449 Pa.Super. 416, 674 A.2d 268, 271 (1996) (citations omitted). Based upon the foregoing, we agree with the trial court that a curative instruction was unnecessary in that the remarks of appellees' counsel were neither inflammatory nor prejudicial.

¶ 20 As appellant has failed to establish any reversible error, we affirm the judgment entered in favor of appellees.

¶ 21 Judgment affirmed.