Robin M. WYTIAZ and Keith Wytiaz, Her Husband, Appellants

v.

David J. DEITRICK, D.O., Mercy Primary Care, Inc., Khalili Noorbakhsh and Deitrick Metropolitan Obstetric Gynecology Associates, Inc., Appellees.

Superior Court of Pennsylvania.

Argued April 29, 2008.
Filed July 25, 2008.

Elizabeth A. Farina, Pittsburgh, for appellant.

Paula A. Koczan, Pittsburgh, for Deitrick, appellee.

Anita B. Folino, East Lansing, MI, for Mercy, appellee.

BEFORE: ORIE MELVIN, BENDER and ALLEN, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 Appellants, Robin and Keith Wytiaz, appeal from the judgment entered following a jury verdict in favor of the defense in this medical malpractice action. Appellants claim that the verdict was against the weight of the evidence and that they were denied a fair trial. After careful review, we affirm.

¶ 2 The trial court succinctly set forth the relevant factual background in this matter as follows.

Plaintiffs instituted the within action by the filing of a complaint in February 2006 alleging medical negligence on the part of the Defendants. Mrs. Wytiaz averred that her relevant course of treatment began in approximately January 2002, when she had a baseline screening mammogram with normal results. Thereafter, she was seen by the Defendant, Dr. David J. Deitrick, beginning with an annual examination on January 17, 2003, and on a number of occasions up through and including visits in 2004 and 2005, during the last of which she was diagnosed with breast cancer. Plaintiffs alleged that Dr. Deitrick had been negligent in failing to properly examine and care for her as early as January 2003 based upon her complaints, but most certainly by August 11, 2003, when she was making complaints consistent with a thickening under her right breast. Further, [they alleged] that he continued for some time to fail to conduct proper examinations, order appropriate testing, and reach a timely diagnosis, and that as a result Mrs. Wytiaz was required to undergo significant surgery, chemotherapy treatment, radiation therapy, and herceptin therapy.

At trial, each of the parties presented three expert witnesses from the related disciplines in the diagnosis and care of individuals with breast cancer.

Trial Court Opinion, 9/27/07 (Scanlon, J.),[1] at 2–3.

¶ 3 The case proceeded to a jury trial in January 2007, at the conclusion of which the jury found in favor of the defense. Specifically, the jury answered the first interrogatory as follows:

**QUESTION 1:**

Do you find that the conduct of the defendant, fell below applicable standard of medical care? In other words, was David J. Deitrick, D.O. negligent?

Yes _____     No _✓_

Certified Record (C.R.) at 46. Appellants filed post-trial motions which the trial court denied, and this timely appeal fol-

---

1. A second trial court opinion authored by a different judge was also filed on September 27, 2007.

lowed. Appellants present the following two issues for our review:

I. Whether a new trial was required due to the jury's verdict being against the weight of the evidence, as all competent evidence showed that Robin Wytiaz reported a palpable abnormality to Defendant Deitrick on August 11, 2005[sic], which he failed to treat in violation of the governing standard of care?

II. Whether a new trial was required because the court's denial of Plaintiffs' proposed voir dire questions resulted in a bias-tainted jury, which precluded Plaintiffs from receiving a fair trial[?]

Appellants' brief at 4.[2] We address these claims in the order presented.

¶ 4 We begin with our well-settled standard of review of claims relating to the weight of the evidence.

Our review of challenges to the weight of the evidence is extremely limited. We will respect the trial court's findings with regard to credibility and weight of the evidence unless it can be shown that the lower court's determination was manifestly erroneous, arbitrary and capricious, or flagrantly contrary to the evidence. Additionally, this Court's review of a weight of the evidence claim is a review of the trial court's exercise of discretion in weighing the evidence, not of the underlying question of whether we believe that the verdict is, in fact, against the weight of the evidence.

*In re Mampe,* 932 A.2d 954, 960 (Pa.Super.2007) (citations omitted), *appeal denied,* 596 Pa. 718, 944 A.2d 758 (2008).

¶ 5 Appellants contend on appeal, as they did before the trial court, that all of the credible evidence presented at trial establish that Dr. Deitrick breached the standard of care in caring for Appellant/Wife. Following our careful review, we find Appellants' claim oversimplifies the testimony and is belied by the record. Furthermore, we agree with the following reasoning of the trial court in denying Appellants' motion for a new trial:

[Appellants'] counsel suggests there was no conflict among the experts with regard to the existence of a palpable abnormality in Mrs. Wytiaz's right breast in August 2003 or June 2004. There is testimony from all three defense experts to the contrary. Dr. Schwartz, the breast surgeon, testified in part regarding his belief that there was no palpable abnormality at any of the relevant times bearing on the issue of the failure to timely diagnose. Further, the questions involving indications for further diagnostic study such as a diagnostic rather than routine mammogram, or for a sonogram and compliance with the standard of care in that regard, were addressed by both Dr. Schwartz and Dr. Bolognese, the [defense] OB/Gyn expert. In addition, [defense] testimony from Dr. Aben, the radiologist, supported the judgment of Dr. Deitrick retrospectively, by establishing the lack of a radiologic indication for a diagnostic mammogram or ultrasound during any of the visits where Mrs. Wytiaz was seen by Defendant-physician David Deitrick.

\* \* \* \*

The issue is really whether after due consideration of all of the evidence presented, including close to 600 pages of testimony from six different expert witnesses spread out over seven hours before this jury, that its decision could reasonably have been reached. \* \* \* \* Careful and thorough review of the rec-

---

**2.** Appellants complied with the trial court's direction to file a Rule 1925(b) statement, and the trial court provided two separate Rule 1925(a) opinions to support the rulings challenged on appeal.

ord· of testimony in this case leads one only to a conclusion that there was an undeniable conflict in the testimony presented by the six expert witnesses. Such conflict could only have been resolved by the jury.

Trial Court Opinion, 9/27/07 (Scanlon, J.), at 4–5 (citations to record omitted). We discern no abuse of the trial court's discretion in denying the motion for a new trial on this basis.

¶ 6 Appellants' other argument is that the· trial court abused its discretion when it refused their request to ask the potential jurors several particular voir dire questions and that they were thereby denied a fair trial. In addressing this contention, we observe that, "[t]he purpose of the voir dire examination is to secure a competent, fair, impartial and unprejudiced jury." *Mansour v. Linganna,* 787 A.2d 443, 448 (Pa.Super.2001) (citation omitted), *appeal denied,* 568 Pa. 702, 796 A.2d 984 (2002). The Rules of· Civil Procedure provide for voir dire to permit the parties to obtain pertinent information about potential jurors including any "[r]easons the prospective juror believes he or she cannot or should not serve as a juror" and "[s]uch other pertinent information as may be appropriate to the particular case to achieve a competent, fair and impartial jury." Pa.R.C.P. 220.1(a)(14) and (16), 42 Pa.C.S.A. Furthermore, "[t]o achieve this goal the trial judge has broad discretion in determining the scope, manner and procedure of the voir dire examination, and his decisions will not be reversed in the absence of palpable error." *Mansour,* supra, at 448.

¶ 7 Relying principally upon *Capoferri v. Children's Hospital of Philadelphia,* 893 A.2d 133 (Pa.Super.2006), *appeal denied,* 591 Pa. 659, 916 A.2d 630 (2006), Appellants claim they should have been permitted "to question potential jurors on their

attitudes toward medical malpractice." Appellant's brief at 26. The questions which Appellants sought to ask the venire are as follows.

1. Some people have a belief that doctors should not be held liable for medical mistakes or malpractice. There is nothing wrong with this belief, but we need you to tell us if you have such a belief.

2. Some of you may have heard or read about medical malpractice lawsuits in the media. Have you heard anything that has caused you to form any opinions about such lawsuits?

3. If a doctor makes a medical error and a patient suffers harm because of it, do you have any beliefs that would prevent you from awarding compensation to such a patient?

*See* C.R. at 48; Trial Court Opinion, 9/27/07 (Strassburger, J.), at 3–4.

¶ 8 In *Capoferri,* the plaintiffs filed a medical malpractice suit alleging the defendants were negligent in caring for their young son. The plaintiffs sought to ask the following questions of the potential jurors about "media coverage of 'the alleged medical malpractice crisis in and the alleged flight of physicians from Philadelphia,' " *id.* at 135:

27) Have you seen or heard advertisements which criticize persons who use the judicial system as a method of recovering money for personal injuries or damages caused by another person? If so, what have you seen or heard?

28) Does anything concern you about personal injury lawsuits generally or medical malpractice cases in particular in which an injured person seeks money damages? If so, what is your concern? Please explain.

29) Do any of you have any prejudice against a person who files a lawsuit seeking money damages for personal in-

juries based upon anything you or anyone in your family or household has seen or heard, or based upon any personal feelings or thoughts you may have?

30) Do any of you have any preconceived prejudice against individuals who file a lawsuit claiming injuries as a result of the medical malpractice of hospitals and/or physicians, because of recent publicity, advertising or newspaper stories that you have read or heard regarding the "so-called" medical malpractice crisis in the Philadelphia community? If so, please explain.

*Id.* The trial court denied the request, and the matter proceeded to a jury trial with a verdict in favor of the defense. On appeal, we concluded that the trial court abused its discretion, reasoning that, because of the "massive amount of media coverage" on medical malpractice and tort reform, the parties should have been permitted to question the prospective jurors on their views of those subjects to ascertain their impartiality. *Id.* at 142. This Court did not, however, endorse the above questions, and instead suggested that the trial court ask appropriate preliminary questions to discover "whether any of the prospective jurors had been exposed to tort reform and medical negligence propaganda." *Id.* at 143 (quoting *Barrett v. Peterson,* 868 P.2d 96, 102 (Utah Ct.App. 1993)). Potential jurors who had been so exposed could then be questioned further for bias. *Id.* Accordingly, we reversed and remanded for a new trial.

¶ 9 In the case at bar, we note at the outset that the certified record does not contain a transcript of the voir dire proceedings, nor is there an order denying Appellants' proposed questions for the venire. Nonetheless, this claim was presented in Appellants' motion for post-trial relief and addressed by the trial court in a Rule 1925(a) opinion.[3] Specifically, the trial court explained that it "denied all three questions because they were covered by the Allegheny County standard *voir dire* questions." Trial Court Opinion, 9/27/07 (Strassburger, J.), at 4. Those standard questions are as follows.

21) Based on anything you may have heard or read, do you have a belief or opinion about civil damage lawsuit?

a) If so, what is that opinion or belief?

b) Will that influence your judgment in this case so that you may not be able to be fair and impartial?

22) This case involves a claim for money damages and is the type commonly called a (products liability; medical malpractice; auto accident; breach of contract; etc.) lawsuit.

a) Do you have an opinion or a belief for or against this type of case, the people who file this type of case, or the persons who are sued in this type of case?

b) If so, what is that opinion or belief?

23) Will that influence your judgment in this case so that you may not be able to be fair and impartial?

24) Is there any reason why you feel you cannot serve as a fair and impartial juror in this case?

*Id.* at 5–6; Allegheny Cty. L.R. 220.1.

¶ 10 In their brief on appeal, Appellants baldly assert that there was a "significant

---

**3.** The record also reflects that Appellants included, as exhibits and an appendix to their post-trial motion, a sizeable number of articles retrieved from various internet websites which purportedly supported their claim relating to the proposed voir dire. The trial court granted the motion of the defense to strike those exhibits and appendix. Addition-

ally, the trial court noted that, "[a]t the time Plaintiffs in this case proposed the additional *voir dire* questions, they did not make any reference to specific or pervasive media coverage of the medical malpractice crisis near the time of this trial in Pittsburgh, Allegheny County, or Pennsylvania." Trial Court Opinion, 9/27/07 (Strassburger, J.), at 6 n. 3.

media campaign against medical malpractice lawsuits in Allegheny County" and that "the jury in the present case was prejudicially tainted against" them. Appellant's brief at 27. They suggest that the standard questions are sufficient to *"begin* the screening process" but were not adequate to fully explore potential bias. Appellant's brief at 31 (emphasis in original).

¶ 11 We disagree. Unlike the plaintiffs in *Capoferri,* the potential jurors in this case were asked specific questions which were designed to uncover potential bias or impartiality, including whether they had been exposed to and affected by media influences and whether they had any specific beliefs about medical malpractice lawsuits or the parties involved in such litigation. Simply because the trial court refused to use the particular wording of the proposed questions offered by Appellants does not mean that they were precluded from conducting the appropriate inquiry into the potential jurors' "attitudes toward medical malpractice." Appellant's brief at 26. Appellants also do not assert that they were prevented from questioning further any potential juror who answered one or more of the standard voir dire questions in a manner which might prompt additional inquiry. Simply put, we are unable to conclude that the trial court abused its discretion. Accordingly, this claim fails.

¶ 12 Judgment affirmed.