J-A17027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| NEIL EICHELBERGER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MARK AZEMAR AND ALLENTOWN REFRIGERATED TERMINALS, INC., G & H INTERNATIONAL TRADERS, INC., OREFIELD COLD STORAGE & DISTRIBUTION CENTER, INC., OCS TRANSPORT INCORPORATED, OCS TRANSPORT SERVICES, INC., UNIQUE BROKERAGE, INC., SEL, INC., HAZLETON MACARONI COMPANY, INC., ANGUS BRANDS, INC., DYNASTY MARKETING, INC., SCHNITZEL FOODS, INC., CREAM VALLEY, INC., AND TALYANO FOODS, INC. | |
| _____ | |
| MARK AZEMAR | |
| v. | |
| NEIL EICHELBERGER AND ALLENTOWN REFRIGERATED TERMINALS, INC., G & H INTERNATIONAL TRADERS, INC., OREFIELD COLD STORAGE & DISTRIBUTION CENTER, INC., OCS TRANSPORT INCORPORATED, OCS TRANSPORT SERVICES, INC., UNIQUE BROKERAGE, INC., SEL, INC., HAZLETON MACARONI COMPANY, INC., ANGUS BRANDS, INC., DYNASTY MARKETING, INC., SCHNITZEL FOODS, INC., CREAM VALLEY, INC., TALYANO FOODS, INC. AND OCS II | No. 3543 EDA 2016 |
| APPEAL OF: NEIL EICHELBERGER | |

Appeal from the Judgment Entered November 14, 2016
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2014-C-1098, 2014-C-4015

J-A17027-17

BEFORE: GANTMAN, P.J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY RANSOM, J.: **FILED SEPTEMBER 20, 2017**

Appellant, Neil Eichelberger, appeals from the judgment entered November 14, 2016, in which the trial court granted declaratory relief to Appellee, Mark Azemar, and money damages in his favor against Allentown Refrigerated Terminals, Inc. ("ART") in the amount of $342,364.00; G&H International Traders, Inc. ("G&H") in the amount of $828,207.00; and SEL Inc. in the amount of $490,434.00.

In July 1989, Appellee merged his company, G&H, into Appellant's company, ART. Notes of Testimony, 6/1/16 at 10-11. After the merger, ART was the parent company, and G&H was the subsidiary. *Id*. The parties subsequently entered into an Employment Agreement that contained an express covenant not to compete. Eichelberger Dep., 6/26/15, 50:14-18. In April 1990, Appellant established Orefield Cold Storage & Distribution Center, Inc. ("OCS"). *Id.* at 46:9-17. Like ART, OCS was a cold storage business. *Id.* at 56:7-16.

Under two agreements entered into in 1989 and 1991, Appellee had the right to purchase up to 50% of ART. *Id.* at 27:20-23, 28:2-4. In the 1991 Agreement, Appellee was given the right to acquire 50% ownership in OCS, and restated his right to purchase up to 50% of ART. *Id.* at 60:5-10, 61:6-15. We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

- 2 -

From 1989 to 2013, ART and the Companies never paid distributions to Appellee although the Companies were profitable in that period. *Id.* at 33:22-25, 34:2-13. From 1991 to 2013, Appellee made payments to the Companies. *Id.* at 102:5-8. The Companies' bookkeepers never kept records of Appellee's payments, and Appellant had no documentation of Appellee's payments. *Id.*

Appellant never notified Appellee that he was in default under the 1989 or 1991 Agreements. *Id.* at 100:20-23. The 1990-91 financial report of the Companies showed that Appellee was 50% owner of OCS and had loaned $477,500 to the Company. *Id.* at 130:22-25, 131:2-4. From 1991 to 2013, tax returns were prepared annually. Both federal and state tax returns reported that Appellant was the majority shareholder of ART and that Appellant and Appellee were 50% shareholders of the other Companies. *Id.* at 88:18-24, 89:2-13.

In 2012, Appellant organized OCS II to engage in the cold storage business. *Id.* at 359:4-25, 360:2-25, 361:2-17. In April 2014, Appellant filed a Praecipe for Writ of Summons. On April 11, 2014, Appellant filed a Complaint seeking declaratory and equitable relief. In response, Appellee filed an Answer, New Matter and Counterclaim. Neither party demanded a jury trial.

In December 2014, Appellee filed a separate Complaint and demanded a jury trial. The cases were subsequently consolidated. In October 2015, the court denied Appellant's Motion for Summary Judgment. Appellant then

filed a motion to strike the jury demand, which was denied in part and granted in part. In November 2015, Appellee filed a motion to disqualify Judge Reichley. The motion was denied but Judge Reichley granted a joint request for recusal. In December 2015, Appellant filed a second motion to strike the jury demand. In March 2016, Appellant's motion was denied.

In June 2016, following trial, the jury entered a verdict by answering special verdict questions, and the trial court entered a Molded Verdict and Order. Appellant and Appellee both timely filed Motions for Post-Trial Relief. In July 2016, the trial court entered an Amended Molded Verdict Order and entered Declaratory Judgment in favor of Appellee. The trial court entered judgment in favor of Appellee against ART in the amount of $342,364.00, G&H International Traders Inc. in the amount of $828,207.00, and SEL Inc. in the amount of $490,434.00.

Thereafter, the parties timely filed post-trial motions. Following briefing and argument, an order was entered in October 2016, denying all post-trial motions. In November 2016, the parties timely filed cross-appeals from the trial court's denial of their respective motions for post-trial relief. Appellee withdrew his cross-appeal. In December 2016, the trial court filed a 1925(a) statement but did not order a 1925(b) statement.

On appeal, Appellant presents the following issues for our review:

A. Did the trial court err as a matter of law or abuse its discretion in denying Neil Eichelberger's Motion to Strike Jury Trial Demand, particularly considering (i) there was no demand for jury trial ever filed in No. 2014-C-1098, and (ii)

- 4 -

the predominantly equitable nature of the parties' claims and requests for relief?

B. Should judgment notwithstanding the verdict have been entered in Eichelberger's favor against Mark Azemar on the latter's claims to stock ownership in Orefield Cold Storage & Distribution Center, Inc., Allentown Refrigerated Terminals, Inc., and the other companies, given Azemar's conclusively binding admissions at trial that he had breached and voided the underlying contracts, thereby rendering incorrect as a matter of law the jury's "No" answer to Special Verdict Question No. 1 ("Has Neil Eichelberger proven that Mark Azemar breached the 1989 and 1991 agreements?")?

C. In the alternative, should judgment notwithstanding the verdict have been entered in favor of Eichelberger and against Azemar on the latter's claims regarding stock ownership in Orefield Cold Storage & Distribution Center, Inc., Allentown Refrigerated Terminals, Inc. and the other companies, given there was no evidence whatsoever that any of the monies paid by Azemar to any of the companies was treated as anything other than loans, which Mr. Azemar never contested or disputed for over 20 years?

D. In the alternative to Questions B and C above, was the jury's answer of "No" to Special Verdict Question No. 1 ("Has Neil Eichelberger proven that Mark Azemar breached the 1989 and 1991 agreements?") so contrary to the evidence and shocking to the conscience as to warrant a new trial?

E. Did the trial court err as a matter of law or abuse its discretion and thereby substantially prejudice Neil Eichelberger's case, by (i) limiting the testimony of the companies' accountants, David Miller, CPA and Christopher Wills, CPA, to rebuttal and impeachment of Mark Azemar, (ii) limiting Miller's and Wills' testimony concerning the companies' financial statements and their loan ledgers to the issue of whether Mark Azemar had received notice of those documents, (iii) prohibiting the admission as exhibits of the financial statements and the loan ledgers, and (iv) instructing the jury that the testimony of Christopher Wills, CPA regarding shareholder loan balances set forth in Orefield financial statements was not offered and may not be considered for the truth of those numbers?

Appellant's Brief at 6-7.

Appellant first asserts that the trial court improperly denied his motion to strike the jury demand. According to Appellant, Appellee failed to timely demand a jury, and his demand was not appropriate in a case involving equity issues.[1]

> In any action in which the right to jury trial exists, that right shall be deemed waived unless a party files and serves a written demand for a jury trial **not later than twenty days after service of the last permissible pleading**. The demand shall be made by endorsement on a pleading or by a separate writing.

Pa.R.C.P. 1007.1(a) (emphasis added).

The trial court reasoned as follows:

> The last permissible pleading in the First Case was the Reply To New Matter And Counterclaim filed by the Interested Parties on August 26, 2014. That pleading contains a Certificate of Service indicating that it was mailed on August 26, 2014, so we can reasonably infer that it was served within five calendar days, a reasonable time for first class mail. Thus, the date of service appears to be around August 31, 2014. [Appellee] had twenty days from August 31, 2014, or until approximately September 19, 2014, to demand a jury. We consider his demand for jury trial filed in the Second Case to be effective as to the First case when the two cases were consolidated on January 26, 2015.

Trial Court Opinion, 3/10/16 at 10.

_____

[1] In April 2014, Appellant first filed complaint No. 2014-C-1098, at which time he did not file a jury demand. In December 2014, Appellee filed a second complaint and with it demanded a jury trial. In January 2015, both cases were consolidated.

- 6 -

Nevertheless, Appellant asserts that Appellee's failure to demand a jury in the first case renders any subsequent request untimely. However, a party will not be denied a jury trial due to an untimely demand under Rule 1007.1. The rule's requirements are not mandatory in nature and allow for exceptions. **Dauphin Deposit Bank and Trust Co. v. Pifer**, 556 A.2d 904, 906 (Pa. Super. 1989). Our Supreme Court has stated "there is no inherent prejudice in proceeding to trial by jury as opposed to trial before a judge." **Id.** at 907, (citing **Commonwealth v. Morales**, 494 A.2d 367, 374 (Pa. 1985); **Commonwealth v. Bonacurso**, 455 A.2d 1175 (Pa. 1983)).

Here, the trial court reasoned:

[Appellee's] failure to file a written demand for jury trial by September 19, 2014 appears to fall into the category of "error or defect of procedure" referred to in Rule 126.[2]

In the case of **Selck-Minnerly Group Inc. v. Mathews Intern Corp.**, 13 Pa. D & C.3d 149 (1980), the Court of Common Pleas of Allegheny County state: "[W]e should not deny the right to a jury trial to a party who *has not knowingly waived this right in the absence of prejudice to an adverse party* or inconvenience to the court." **Id.** at 151 (emphasis added). The court in **Selck** went on to state:

. . . the Pennsylvania Supreme Court did not exclude rule 1007.1 from the provisions of Pa.R.C.P. 126 which permits the court at any stage of any action to disregard any error or defect of procedure which does not affect the

---

[2] [T]he rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties. Pa.R.C.P. 126.

substantial rights of the parties and Pa.R.C.P. 248 which permits the court to extend the time prescribed by any rule of civil procedure for the doing of any act. *Id.*

We have no evidence indicating that [Appellee] knowingly waived his right to a jury trial.

The phrase "prejudice to an adverse party" contained in **Selck, supra** appears to be consistent to the phrase "affect the substantial rights of the parties" contained in Rule 126. Therefore, we now turn to an analysis of the effect to [Appellant] in granting [Appellee] a jury trial and whether doing so would affect the substantial rights of [Appellant] and/or the interested parties.

[As of] March 7, 2016 [,] the procedural posture of the Subject Cases include[d] the following: 1) [Appellant] did not file the Motion To Strike until six and a half months after [Appellee's] Jury Trial Demand was filed and only eight days prior to the trial date before Judge Reichley; 2) [Appellant] knew, as of January 28, 2015 when the Subject Cases were consolidated by Judge Reichley's Order, that there was a jury trial demand in the Subject Cases[;] 3) the Pre-Trial Conference and Trial before the undersigned have not been scheduled yet; 4) the Pre-Trial Conference and Trial before the undersigned will not be scheduled without coordination of dates with all counsel, as is the undersigned's usual practice; 5) the Pre-Trial Conference and Trial before the undersigned will not be held for at least a few months into the future because of the Court's already full Court schedule, thus providing all parties with adequate time to prepare...

Based on the above analysis, we find that the substantial rights of [Appellant] and the Interested Parties will not be affected, nor will [Appellant] or the Interested Parties be prejudiced...

Trial Court Opinion 3/10/16 at 10-11.

Appellant also contends that Appellees' claims are predominantly equitable and, thus, not entitled to a jury trial. Here, the trial court stated as follows with regards to Appellant's equitable claims:

The Subject Cases contain multiple causes of action, some of which are legal, and some of which are equitable, in nature. A right to jury trial exists as to all legal claims pled in a case commenced with a legal claim. When a case is commenced with an equitable claim, legal claims pled in response thereto are typically deemed incidental to the equitable claim and no right to a jury trial exists. [Appellant] maintains that all of the causes of action set forth in his Complaint are equitable in nature, since both Counts seek a declaratory judgment and, thus, do not entitle any party to a jury trial. . . .

However, this analysis cannot stop with the issue of whether the initial claim is legal or equitable. The Subject Cases were commenced by [Appellant's] Complaint containing two counts seeking declaratory judgments. While a declaratory judgment is equitable in nature, it may involve issues of fact.

Usually in declaratory judgment actions, the parties stipulate to findings of facts or the Court makes findings of fact from evidence presented or a combination of the two. Once the findings of fact have been made, the Court determines any conclusions of law and the appropriate relief that reasonably flows from those findings of fact. Typically, we do not see juries decide facts in a declaratory action.

A reading of [Appellant's] Complaint, especially at paragraphs 8 through 43, reveals that [Appellant] asserts that certain agreements exist or existed between the parties, were modified, and were breached by [Appellee]. These allegations raise questions of fact. Whether the issues are couched as ownership of stock or breach of contract, issues of fact are involved. A review of the applicable portions of the Declaratory Judgment Act, 42 Pa.C.S.A. § 7531, et. seq. ("Act") is necessary.

The Act states in pertinent part:

### § 7532 General scope of declaratory judgment

Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. *Id.*

### § 7533 Construction of documents

- 9 -

Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder. *Id.*

That declaratory judgments are available:

1.) Before or after there has been a breach of contract. §7534

2.) To obtain a declaration of rights or legal relations with respect to the administration of a trust or estate of a decedent, infant or insolvent. §7535

## § 7536 Enumeration not exclusive

The enumeration in section 7533 (relating to construction of documents) through 7535 (relating to rights of fiduciaries and other persons) does not limit or restrict the exercise of the general powers, conferred in section 7532 (relating in general scope of declaratory remedy), in any proceeding, where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty. *Id.*

## § 7539 Issues of fact

(a) **General rule** –Relief may be granted under this subchapter notwithstanding the fact that the purpose or effect of the proceeding, in whole or in part, is to resolve or determine a question of fact.

(b) **Jury trial** – When a proceeding under this subchapter involves the determination of an issue of fact, such issue may be tried and determined *in the same manner as issues of fact are tried and determined in other civil actions* in the court in which the proceeding is pending. *Id. (emphasis added)*

The Act specifically excludes the following from declaratory judgment relief:

1.) actions involving divorce or annulment;

> 2.) proceedings within the exclusive jurisdiction of a tribunal other than a court, i.e., an administrative agency; or
>
> 3.) appeals from orders of tribunals (42 Pa.C.S.A. §7541).

The Act does not appear to specifically include or exclude the types of claims and issues involved in the Subject Cases. But, a declaratory judgment action is an appropriate claim under the Act in the Subject Cases because a resolution of the Subject Cases will terminate the controversy. At the same time, the Subject Cases clearly involve issues of fact. Since issues of fact are tried and determined in other civil actions by juries, it follows that jury can decide the issues of fact in the Subject Cases.

. . .

The Note of the Civil Procedural Rules Committee following Rule 1601[3] provides in pertinent part:

> The existence of a right to a jury trial on disputed issues of fact will be a matter of determination in each action where only declaratory relief is sought. If the right is claimed and disputed, the court must determine the question on the basis of the nature of the cause of action, the right to be enforced and the "other civil action" which would be brought to enforce it if declaratory judgment did not exist.
>
> [This rule] states that when an action involves the determination of an issue of fact it shall be tried "in the same manner as issues of fact are tried and determined in other civil actions." Since some "other civil actions" are tried by jury and some are tried without jury, the language is not helpful.

_____

[3] Pa.R.C.P. 1601 Action for Declaratory Relief Alone. Jury Trial. Waiver
  (a) A plaintiff seeking only declaratory relief shall commence an action by filling a complaint captioned "Action for Declaratory Judgment". The practice and procedure shall follow, as nearly as may be, the rules governing the civil action.
  (b) If the right to trial by jury of disputed issues of fact exists in such an action, it shall be deemed waived unless demanded in the time and manner provided by Rule 1007.1.

> [In] an action brought only for declaratory relief, the right to jury trial must be determined as though the appropriate "other civil action" had been brought. For example, if, in the absence of declaratory judgment, the cause of action would be enforced by an action in assumpsit for money damages, with a constitutional right to trial by jury, that right would exist as to any issues of fact if an action for declaratory judgment were brought with respect to that cause of action, whether or not the money damages were claimed. Rule 1601(a) provides that the practice and procedure shall follow the Equity Rules, but that is only "as nearly as may be." The Rule does not and could not annul or impair a right to trial by jury. *Id.*

The Subject Cases began with a Complaint containing counts pursuant to the Act and allegations which involve issues of fact. While the Act does not explicitly involve the issues of modification or breach of contract, it also does not exclude them. There is underlying action here, so the only facts to be determined arise from the allegations set forth in [Appellant's] Complaint. [Appellant] could have pled the same facts and have requested damages, but he chose equitable relief instead. This does not change the underlying factual issues that must be resolved. Therefore, a right to jury trial on the issues of fact in [Appellant's] Complaint exists.

Having made this determination, we turn to the question of whether there is a right to jury trial for [Appellee's] Counterclaim and Complaint. A reading of [Appellee's] Counterclaim and Complaint reveals that [Appellee] complains about the same relationships, agreements, transactions, occurrences and events as those which are the subject to [Appellant's] Complaint. In light of this relationship between the pleadings filed by the parties, the right to jury trial on issues of fact extends to [Appellee's] Counterclaim and Complaint. To the extent [Appellee] raises any additional allegations of fact to [Appellant's], justice and judicial economy require that a jury decide all issues of fact related to the Subject Cases. To do otherwise, would risk inconsistent verdicts and possible res judicata issues.

So as a practical matter, how should the trial proceed? A specific example of a Pennsylvania Court applying these principles is the Court of Common Pleas of Allegheny County in ***Wheeling-Pittsburg Steel Corp. v. Alexander & Alexander,***

- 12 -

> *Inc.*, 36 Pa. D. & C.3d 605, 607 (PA. Com. Pl. 1984).  In that case, the jury answered  interrogatories and the trial judge then entered  an  order  pursuant  to  the  declaratory  judgment provisions of the Judicial Code (42 Pa.C.S., et seq.), and Rules 1601, 1602, et seq., of the Rules of Civil Procedure…*Id.*  "In respect  to  the  complaint  in  assumpsit,  the  jury  answered interrogatories to the effect that both [Alexander and Alexander ("A&A")] and [CAN Financial Corporation ("CAN")] had breached their contractual obligations to plaintiff."  *Id.*
>
> . . .
>
> Based  upon  the  above  analysis,  the  proper  procedure  for  the Subject Cases is what might be called hybrid jury/non-jury trial with  one  evidentiary  record  from  which  the  jury  decides  all issues of fact as well as legal claims and the Court fashions the appropriate equitable relief from the jury's findings. . .

Trial Court Opinion at 3-8.  The trial court's analysis is sound and supported by the record.  Accordingly, we adopt the trial court's reasoning as our own. Thus, no relief is due.

Appellant's  second  issue  challenges  the  trial  court's  order  denying JNOV.[4]   Appellant  contends  that  the  jury's  answer  to  Special  Verdict Question one was incorrect, due to Appellee's admissions at trial.

Our standard of review of the denial of JNOV is well-settled:

> Appellate  review  of  a  denial  of  JNOV  is  quite  narrow.   We  may reverse  only  in  the  event  the  trial  court  abused  its  discretion  or

---

[4] Appellee's assertion that this issue is waived is incorrect.  At the close of the case Appellant moved for a nonsuit.  Notes of Testimony, June 2, 2016 at 263; *see Youst v. Keck's Food Service, Inc.*, 94 A.3d 1057, 1071 (Pa. Super. 2014) ("to preserve the right to request a JNOV post-trial, a litigant must  first  request  a  binding  charge  to  the  jury  or  move  at  trial,  for  a directed  verdict  or  a  compulsory  nonsuit  at  trial.")(quoting *Thomas Jefferson Univ. v. Wapner*, 903 A.2d 565, 570 (Pa. Super. 2006)).

- 13 -

committed an error of law that controlled the outcome of the case. Abuse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will.

When reviewing an appeal from the denial of a request for [JNOV], the appellate court must review the evidence in the light most favorable to the verdict[-]winner and give him or her the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences… Thus, the grant of a judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict[-]winner. Furthermore, [i]t is only when either the movant is entitled to judgment as a matter of law or the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant that an appellate court may vacate a jury's finding.

*Phillips v. Lock*, 86 A.3d 906, 919 (Pa. Super. 2014) (citing *Empire Trucking Co. v. Reading Anthracite Coal Co.*, 71 A.3d 923, 932 (Pa. Super. 2013)).

Special verdict question one asks: "Has [Appellant] proven that [Appellee] breached the 1989 and 1991 agreements?" Verdict Slip 6/3/16. The trial court reasoned:

From the evidence presented at trial, [a] reasonable jury could find that [Appellee] substantially complied with the 1989 and 1991 agreements and/or that [Appellant] waived the strict terms of those agreements through his various actions, such as accepting payments from [Appellee], representing [Appellee] as a fifty percent (50%) owner, and in not declaring [Appellee] in default of those Agreements.

Trial Court Opinion, 10/14/16 at 4. We agree. Thus, we discern no abuse of discretion in the court's denial of JNOV.

In his third issue, Appellant contends that JNOV should have been entered against Appellee, as there was no evidence that the monies paid by Appellee were treated as anything other than loans. As previously stated, JNOV is granted only when no two reasonable minds could disagree on the outcome. *Phillips*, 86 A.3d at 919. Here, the trial court determined that there was sufficient evidence that the monies paid into the Companies were both loans and buy-in payments. *See* Trial Court Opinion at 10. Furthermore, the trial court reasoned that:

> Questions of fact are for a jury to decide. The evidence presented at trial could have led a reasonable jury to conclude, from years of tax returns indicating that [Appellee] was a fifty percent (50%) owner and representations by [Appellant] and the Companies to the banks, that [Appellee] had acquired fifty percent (50%) of the shares. The testimony of [Appellee] and his expert, Paul Pocalyko, could have led a reasonable jury to decide that [Appellee's] payments were made under and as anticipated by, the 1989 and 1991 agreements and that a number of payments made to [Appellee] by the Companies were loan repayments for which [Appellee] could have re-invested in the Companies. Furthermore, sufficient evidence was presented at trial to lead a reasonable jury to conclude that [Appellant] was the person who controlled the Companies. Similarly, a reasonable jury could conclude that any payments made [by] [Appellee] after December 31, 1999 were buy-in payments establishing his fifty percent (50%) ownership in the Companies.
>
> Therefore, judgment notwithstanding the verdict will not be entered in favor of [Appellant] and against [Appellee] on [Appellee's] claims regarding stock ownership in Orefield Cold Storage & Distribution Center, Inc.[,] Allentown Refrigerated Terminals, Inc.[,] and the other Companies.

Trial Court Opinion, 10/14/16 at 9-10. We agree and adopt this analysis as our own. Accordingly, Appellant is not entitled to JNOV.

Next, Appellant argues that he is entitled to a new trial because the jury's answer of "no" to Special Verdict Question No. 1 is contrary to the weight of the evidence. Appellant's Brief at 4. We disagree.

> Our review of challenges to the weight of the evidence is extremely limited. We will respect the trial court's findings with regard to credibility and weight of the evidence unless it can be shown that the lower court's determination was manifestly erroneous, arbitrary and capricious, or flagrantly contrary to the evidence. Additionally, this Court's review of a weight of the evidence claim is a review of the trial court's exercise of discretion in weighing the evidence, not of the underlying question of whether we believe that the verdict is, in fact, against the weight of the evidence.

**Wytiaz v. Detrick**, 954 A.2d 643, 645 (Pa. Super. 2008) (citation omitted).

> A new trial based on weight of the evidence issues will not be granted unless the verdict is so contrary to the evidence as to shock one's sense of justice; a mere conflict in testimony will not suffice as grounds for a new trial. Upon review, the test is not whether this Court would have reached the same result on the evidence presented, but, rather after due consideration of the evidence found credible by the [jury], and viewing the evidence in the light most favorable to the verdict winner, whether the court could reasonably have reached its conclusion. Our standard of review in denying a motion for a new trial is to decide whether the trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion.

**Elliott v. Ionta**, 869 A.2d 502, 504 (Pa. Super. 2005) (citation omitted).

In the instant case the trial court did not commit an error of law or an abuse of discretion. As previously stated, there was evidence presented at trial to support the verdict, as such it does not "shock the conscience."

Appellant's final claim challenges the trial court's limitation of the accountants' testimony. This Court has held that "[a] trial court's rulings on evidentiary questions are controlled by the discretion of the trial court and [an appellate] [c]ourt will reverse only for clear abuse of that discretion." *Hall v. Jackson*, 788 A.2d 390,401 (Pa. Super. 2001) (quoting *Commonwealth v. Vierao*, 659 A.2d 1024, 1028 (Pa. Super. 1995)). In the instant case, Miller and Wills' testimony was inadmissible hearsay. The trial court reasoned as follows:

> David Miller, CPA and Christopher Willis, CPA are accountants for the Companies. The admissibility of Miller's and Wills' testimony is governed by Pennsylvania Rule of Evidence 803, Exceptions to the Rule Against Hearsay - - Regardless of Whether the Declarant Is available as a Witness. Pennsylvania Rule of Evidence 803(6), Records of a Regularly Conducted Activity, states, in pertinent part:
>
> > A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if,
> >
> > (A)    the record was made at or near the time by – or from information transmitted by – someone with knowledge;
> >
> > (B)    the record was kept in the course of regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
> >
> > (C)    making the record was a regular practice of that activity;
> >
> > (D)    all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitted certification; and

(E)   neither the source of information nor other circumstances indicate a lack of trustworthiness.

Moreover, in ***U.S. Bank, N.A. v. Pautenis***, 118 A.3d 386 (Pa. Super. 2015), the Superior Court stated the following concerning the business record exception to the hearsay rule:

> As long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness for the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence. ***Id.***, 118 A.3d at 4001, quoting ***Boyle v. Steiman***, 429 Pa. Super. 1, 631 A.2d 1025, 1032-33 (1993) (internal citations omitted), *appeal denied*, 538 Pa. 663, 649 A.2d 666 (1994).

Further, in ***Bell Atlantic-Pennsylvania, Inc. v. Pennsylvania Public Utility Commission***, 763 A.2d 440 (PA. Commw. 2000). *rearg. den.* (2001), *vacated on other grds nom* ***MCI World Com, Inc. v. Pennsylvania Public Utility Commission***, 577 Pa. 294, 844 A.2d 1239 (2004), the Commonwealth Court stated as follows:

> With respect to the factual support for the PUC's key findings that Bell continues to control over 90% of the local business market and nearly 100% of the local residential market, the evidentiary source is PUC access-line reports based on industry data.  The PUC position as to the admissibility of such source is supported by the Records of Regularly Conducted Activity hearsay exception.  Pa.R.E. No. 803(6) defines that hearsay exception as follows:
>
>> A…report, record or data compilation, in any form, of acts, events or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity…unless the sources of information or other circumstances indicate a lack of trustworthiness…
>
> The factual sources do fall within that description and comply with the further criteria of Rule 803(6) in that its concept of business certainly includes the

telecommunications industry, and the record presents no indication of lack of trustworthiness.

Contrary to **Bell Atlantic –Pennsylvania, Inc.**, the Subject Cases present a genuine issue of trustworthiness as to the basis for the testimony of Miller and Wills. The testimony of Miller and Wills is relevant to the issue of notice to [Appellee] of the content of those documents and his failure to question, complain, act or otherwise communicate about those documents. Furthermore, the documents prepared by Miller and Wills are relevant because they consist of tax returns prepared from information taken from the business records of the Companies. However, the tax returns cannot be used as substitutes for the business records because the tax returns were not prepared in the ordinary course of business, and could contain incorrect information. They, therefore, lack trustworthiness under Pa.R.e. No. 803(6). Also, the accountant's records do not constitute business records of [Appellee] or [Appellant] as defined by the business record exception of the Pennsylvania Rules of Evidence. The business records that no longer exist cannot be substituted with the accountant's documents that were ostensibly prepared from those records.

Additionally, Miller and Wills were not designated by [Appellant], or any party, as expert witnesses. Rather, they were identified as fact witnesses and, therefore, expert opinion testimony from them is inadmissible. This [c]ourt permitted the testimony of Miller and Wills for limited purposes. This [c]ourt precluded them from testifying: 1) to the non-existent Companies' records; 2) that the Companies' records were accurately reflected in the accountants' records; and 3) that the financial statements and loan schedules which the accountants prepared were accurate. This [c]ourt's ruling precluded Miller and Wills from speculating about the accuracy of the Companies' business records. Those records were not maintained, prepared or audited by Miller or Wills and no longer exist. The financial statements and loan ledgers prepared by Miller and Wills were properly ruled inadmissible because the documents were, not in fact, based on the Companies' records maintained in the ordinary course of business, lacked foundation, and are inadmissible hearsay.

This [c]ourt did permit Miller and Wills to testify regarding the financial statements, loan schedules and Federal Tax Returns and, further, permit the publication of those documents to the jury. [Appellant] failed to prove that the financial statements

- 19 -

and loan schedules were accurate or reliable. [Appellant] did not suffer any unfair prejudice that would warrant a new trial.

Therefore, this [c]ourt did not err in: 1) limiting the testimony of David Miller, CPA and Christopher Wills, CPA to rebuttal and impeachment of [Appellee]; 2) in limiting Miller's and Wills' testimony concerning the Companies' financial statements and the loan ledgers to the issue of whether [Appellee] received notice of said documents; and 3) in prohibiting the admission as exhibits of the financial statements and the loan ledgers. Therefore, a new trial is not warranted due to any of these issues.

Additionally, this [c]ourt did not err in instructing the jury that the testimony of Christopher Wills, CPA regarding shareholder loan balances set forth in Orefield financial statements are not offered or to be considered for the truth of those numbers.

Trial Court Opinion at 5-8. We discern no abuse of discretion in the trial courts limitation of testimony.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/20/2017