J-A21021-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| M.L.H. | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| L.M.C., W.H. (DECEASED), AND D.H. | : | No. 369 WDA 2017 |

Appeal from the Order Entered February 15, 2017
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD 14-007453-001

BEFORE: BENDER, P.J.E., OLSON, and STABILE, JJ.

MEMORANDUM BY OLSON, J.: FILED NOVEMBER 21, 2017

M.L.H. ("Maternal Grandmother") appeals from the order dated February 13, 2017 and entered on February 15, 2017, that awarded sole legal custody and primary physical custody of A.H. (born in August of 2010) ("Daughter"), and B.H. (born in February of 2013) ("Son") (collectively, "Children") to Mother; and partial physical custody of the Children to Maternal Grandmother and D.H. ("Paternal Grandmother"). We affirm in part, and remand in part, with instructions to the trial court to clarify the caption of the February 13, 2017 final order of court, and to clarify the custody schedule.

The Children's father, W.H. ("Father"), passed away in May of 2014. On July 22, 2014, Paternal Grandmother filed a complaint seeking partial

custody. The trial court set forth the procedural history of this appeal as follows.

> . . . About a year after Father's death [(in May of 2014)], Paternal Grandmother and Mother entered into a consent order that granted Paternal Grandmother partial custody every other Saturday, from 1:30 P.M. until 7:30 P.M., and every Thursday following the custodial Saturday, from 4:30 P.M. until 7:30 P.M.
>
> On April 7, 2016, Maternal Grandmother filed a Third Party Complaint for Confirmation of Custody that was then deemed a Petition to Modify Custody. An Interim Order of Court dated April 29, 2016 granted Maternal Grandmother and Mother shared physical custody of the Children on a week-on, week-off schedule, with Paternal Grandmother's partial custody periods remaining unchanged. Pursuant to the April 29, 2016 Interim Order, Mother retained sole legal custody of the Children. Finally, pursuant to Maternal Grandmother's August 22, 2016 Emergency Motion to Maintain Status Quo - School, [on that same date] the [c]ourt ordered that the Children should remain enrolled in the Chartiers Valley School District, with Maternal Step-Grandfather providing transportation during Mother's custody weeks.
>
> The [c]ourt conducted a hearing in the matter on January 30, 2017. During the hearing, the [c]ourt heard testimony from the following witnesses: Daughter's substitute first grade teacher, Daughter's first grade teacher, Maternal Step-Grandfather (N.H.), Maternal Grandmother, Maternal Step-Grandfather's Brother (J.H.), two Paternal Aunts (M.K. and K.H.), the Children's Paternal Half-Sister (L.H.), Paternal Grandmother, and Mother. The [c]ourt admitted Maternal Grandmother's Exhibits 1-9 and 11-16[1] and [c]ourt's Exhibit A into the record.
>
> The parties completed all testimony on January 30, 2017.
>
> _____
>
> [1] Maternal Grandmother's counsel identified a document as Maternal Grandmother's Exhibit 10 but never moved to admit this exhibit.

Trial Court Opinion, 5/8/17, at 1-2 (footnote in original).

The trial court made the following factual findings from the testimony at the evidentiary hearing.

> Mother has admittedly struggled with issues of drug and alcohol abuse dating back to her early adulthood. Following Father's death, Mother was arrested on May 19, 2014 and January 13, 2015. These arrests resulted in guilty pleas to two DUI charges and two counts of Endangering the Welfare of Children.[6] Mother received a sentence of probation.

> In December 2015, Mother was arrested for violating her probation. She was incarcerated at the Allegheny County Jail for approximately one month and was released from jail to residential drug and alcohol treatment at Family Links. Mother successfully completed six months of treatment at Family Links. She then obtained her own housing in Brentwood and has maintained her sobriety since her re-entry into the community. At the time of the hearing in this matter, Mother had achieved over a year of sobriety, was fully compliant with the terms of her probation, was actively involved in mental health treatment, and had progressed to the fourth of five stages in this jurisdiction's DUI Court.

> Despite Mother's struggles with substance abuse, the Children have resided with Mother for most of their lives. Mother, Father, and the Children lived together as a family when the Children were born. After a domestic dispute in April 2014, Mother and the Children moved in with Maternal Grandmother. Following Father's death and Mother's arrests, Mother and the Children continued to reside with Maternal Grandmother. The Children lived in Mother's care and Mother's legal custody in Maternal Grandmother's house until December 2015, when Mother was incarcerated. At that point, the Children remained in Maternal Grandmother's care.

> When Mother first entered treatment at Family Links, the Children lived with Maternal Grandmother during the week and stayed with Mother on the weekends. In April 2016, after Maternal Grandmother filed for custody, the Children began alternating between Maternal Grandmother's care and Mother's care on a week-on, week-off schedule.[7] This schedule remained in effect at the time of the hearing.

By all accounts, the Children are thriving. In 2014, while Mother and the Children were residing together with Maternal Grandmother, Mother enrolled Daughter in Chartiers Valley School District, where she remained during the pendency of this litigation.[8] Daughter has performed well in school, has maintained good attendance, and has exhibited no significant behavioral difficulties of any kind.[9]

Son attended Early Enrichment Childcare during Maternal Grandmother's custody weeks. Shortly before Son turned three years old, the Alliance for Infants and Toddlers evaluated him and identified one area in which he might benefit from early intervention services. However, no evidence was presented that DART [("Discovery, Assessment, Referral and Tracking")], which is an entity responsible for early intervention evaluation and services beginning at age three, has ever provided services to Son or recommended them as necessary. Son does not attend day care during Mother's custody weeks, and instead engages in a variety of typical, age-appropriate activities.

The Children benefit from a large network of extended family in the area, including many paternal relatives and Maternal Step-Grandfather's many relatives. In the past year, Mother and paternal relatives have rebuilt their relationships and cooperate well to ensure that the Children maintain their connection to Father's side of the family, including their older half-siblings as well as Paternal Grandmother, cousins, and aunts.

It was against this background that the [c]ourt evaluated Maternal Grandmother's request for primary custody of the Children, which would have amounted to a significant reduction in the time Children spent with Mother.

_____

[6] See Maternal Grandmother's Exhibit 8.

[7] See Maternal Grandmother's Exhibit 9.

[8] Tr. 88, 94 (January 30, 2017).

[9] See Maternal Grandmother's Exhibit 1.

Trial Court Opinion, 5/8/17, at 3-5 (footnotes in original).

- 4 -

The trial court continued its explanation of the procedural history of this appeal as follows.

On February 6, 2017, with all parties present, the [c]ourt announced its decision and discussed its findings related to the custody factors that the court must consider pursuant to the Domestic Relations Code.[2] The [c]ourt awarded primary physical custody of the Children to Mother, and partial physical custody to Maternal Grandmother and Paternal Grandmother. The [c]ourt maintained sole legal custody with Mother. The [c]ourt subsequently issued its final order on February 13, 2017. The order was entered on the docket on February 15, 2017. On March 3, 2017, Maternal Grandmother timely filed her Notice of Appeal.[3] On March 7, 2017, the [c]ourt issued a [Pa.R.A.P.] 1925(b) order directing Maternal Grandmother to immediately file a concise statement of matters complained of on appeal and to serve copies on Mother, Paternal Grandmother, and the Court.[4] Maternal Grandmother filed her Concise Statement of Matters Complained of on Appeal ("Concise Statement") on March 9, 2017[.]

_____

[2] Tr. 4-14 (February 6, 2017).

[3] The [c]ourt's opinion is being filed after the 30-day fast track deadline as the [c]ourt did not receive all necessary transcripts until March 27, 2017.

[4] See Rule 1925(b) Order, dated February 7, 2017.

Trial Court Opinion, 5/8/17, at 1-2 (footnotes in original).[1]

_____

[1] See In re K.T.E.L., 983 A.2d 745 (Pa. Super. 2009) (finding that the appellant's failure to simultaneously file a Rule 1925(b) Statement did not result in waiver of all issues for appeal where the appellant later filed the Statement, and there was no allegation of prejudice from the late filing); compare J.P. v. S.P., 991 A.2d 904 (Pa. Super. 2010) (appellant waived issues for appeal by failing to comply with trial court's order directing her to file a Rule 1925(b) Statement within 21 days).

In her brief on appeal, Maternal Grandmother raises the following issues:

I. Did the trial court err as a matter of law and abuse its discretion in failing to address the application of the sixteen (16) custody factors set forth in 23 Pa.C.S.A. § 5328?

II. Did the trial court err as a matter of law and abuse its discretion in failing to author the terms of the February 13, 2017 Final Custody Order of Court in a "sufficiently specific" manner in accordance with Pa.R.C.P. No. 1915.10(b)?

III. Did the trial court err as a matter of law and abuse its discretion in issuing a Final Custody Order of Court that was inconsistent with its February 6, 2017 disposition of the custody factors under 23 Pa.C.S.A. § 5328, which was made on the record in open court, with respect to the physical custody schedule outlined in the Final Custody Order?

IV. Did the trial court err as a matter of law and abuse its discretion by ignoring the best interest of the children standard when it determined that various relevant custody factors under 23 Pa.C.S.A. § 5328 were "not applicable" despite the undisputed admissible evidence?

V. Did the trial court err as a matter of law and abuse its discretion when it ordered that [Mother] shall have primary custody of the [C]hildren, when the evidence clearly revealed that [Maternal Grandmother], despite her third-party custodian status, has been caring for the children on a full-time basis in her home that she owns; enrolled and continues to be the only custodial parent active in their schooling; offers a more stable living environment; and is the party more likely to encourage and permit continued and frequent contact?

VI. Did the trial court err as a matter of law and abuse its discretion when it made more than reasonable accommodations to ensure [Mother], a pro se litigant, the opportunity to have her matters heard in violation of Code of Jud. Conduct, Rule 2.2, 42 Pa.C.S.A?

VII. Did the trial court err as a matter of law and abuse its discretion when it acted with impropriety, bias, and or prejudice

in violation of Code of Jud. Conduct, Rule 2.3, 42 Pa.C.S.A, and Rule 1.2, 42 Pa.C.S.A?

Maternal Grandmother's Brief, at 2-3.

As the custody trial in this matter was held in January of 2017, the Child Custody Act ("the Act"), 23 Pa.C.S.A. §§ 5321 to 5340, is applicable. C.R.F. v. S.E.F., 45 A.3d 441, 445 (Pa. Super. 2012) (holding that, if the custody evidentiary proceeding commences on or after the effective date of the Act, i.e., January 24, 2011, the provisions of the Act apply).

In custody cases, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

Id. at 443 (citation omitted).

We have stated:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

Ketterer v. Seifert, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting Jackson v. Beck, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

In M.A.T. v. G.S.T., 989 A.2d 11 (Pa. Super. 2010) (en banc), we stated the following regarding an abuse of discretion standard.

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

Id. at 18-19 (quotation and citations omitted).

With any custody case decided under the Act, the paramount concern is the best interests of the child. See 23 Pa.C.S.A. §§ 5328, 5338. Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338. Section 5328(a) of the Act sets forth the best interest factors that the trial court must consider. See E.D. v. M.P., 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011); 23 Pa.C.S.A. § 5328.

Section 5323 of the Act provides for the following types of awards:

(a) Types of award.—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

- 8 -

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S.A. § 5323.

Section 5323(d) provides that the court shall delineate the reasons for its decision on the record in open court or in a written opinion or order. 23 Pa.C.S.A. § 5323(d).

Section 5322 of the Act defines the relevant forms of custody as follows:

§ 5322. Definitions

(a) This chapter.— The following words and phrases when used in this chapter shall have the meanings given to them in this subsection unless the context clearly indicates otherwise:

* * *

"Legal custody." The right to make major decisions on behalf of the child, including, but not limited to, medical, religious and educational decisions.

* * *

"Partial physical custody." The right to assume physical custody of the child for less than a majority of the time."

"Physical custody." The actual physical possession and control of a child.

"Primary physical custody." The right to assume physical custody of the child for the majority of time.

* * *

"Shared legal custody." The right of more than one individual to legal custody of the child.

"Shared physical custody." The right of more than one individual to assume physical custody of the child, each having significant periods of physical custodial time with the child.

"Sole legal custody." The right of one individual to exclusive legal custody of the child.

"Sole physical custody." The right of one individual to exclusive physical custody of the child.

* * *

23 Pa.C.S.A. § 5322.

Section 5328(a) of the Act provides as follows:

§ 5328. Factors to consider when awarding custody

(a) Factors.—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328.

In A.V. v. S.T., 87 A.3d 818 (Pa. Super. 2014), this Court explained the following:

"All of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." J.R.M. v. J.E.A., 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). . . .   The record must be clear on appeal that the trial court considered all the factors. Id.

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record or in open court or in a written opinion or order."  23 Pa.C.S.A. 5323(d).  Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal."  C.B. v. J.B., 65 A.3d 946, 955 (Pa. Super. 2013), appeal denied, [620 Pa. 727], 70 A.3d 808 (2013).  Section 5323(d) applies to cases involving custody and relocation. A.M.S. v. M.R.C., 70 A.3d 830, 835 (Pa. Super. 2013).

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." M.J.M. v. M.L.G., 63 A.3d 331, 336 (Pa. Super. 2013), appeal denied, [620 Pa. 710], 68 A.3d 909 (2013).  A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). Id.

A.V., 87 A.3d at 822-823.

Both Maternal Grandmother and the trial court grouped Maternal Grandmother's issues 1, 4, and 5 together, as these issues comprise a challenge to the trial court's assessment of the facts and weighing of evidence regarding the Children's best interests under the section 5328(a)

best interest factors. In her summary of argument section of her brief, Maternal Grandmother argues that, despite the presumption against awarding physical custody to her as a third-party custodian, the clear and convincing evidence at the evidentiary hearing, when properly weighed against the sixteen section 5328(a) best interest factors, demonstrated that the best interest of the Children would be served by awarding her shared legal and substantial partial physical custody. Maternal Grandmother's Brief, at 9. Maternal Grandmother contends that the trial court's findings with regard to the section 5328(a) factors that the court did not weigh in her favor were not in the Children's best interests. Id.

Maternal Grandmother argues that Mother has a significant history of dangerous substance and alcohol abuse, and has been in and out of substance and alcohol rehabilitation, as well as incarceration. Id. at 10. Maternal Grandmother asserts that she has always supported and encouraged Mother with her struggle with substance and alcohol abuse, and she has always supported the Children's best interests and relationship with Mother. Id. Maternal Grandmother alleges "Mother did not present one scintilla of evidence that indicated she has truly rehabilitated herself [and] improved her parenting abilities." Id. Maternal Grandmother asserts that Mother has never safely had sole legal and primary physical custody of the Children. Id. In her prayer for relief, Maternal Grandmother requests shared legal and shared physical custody of the Children with Mother, and an

order returning the Children to Chartiers Valley Primary School. Id. at 11, 38.[2]

The trial court prefaced its analysis of Maternal Grandmother's issues by discussing the presumption favoring parents over third parties in custody disputes and the trial court's process of weighing the evidence set forth in the Act, 23 Pa.C.S.A. § 5327(b). Section 5327(b) of the Act provides:

> § 5327. Presumption in cases concerning primary physical custody
>
> (a) Between parents.— In any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be awarded to a particular parent.
>
> (b) Between a parent and third party.—In any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence.
>
> (c) Between third parties.—In any action regarding the custody of the child between a nonparent and another nonparent, there shall be no presumption that custody shall be awarded to a particular party.

23 Pa.C.S.A. § 5327.

_____

[2] We observe that Maternal Grandmother argues that it is in the Children's best interests for the court to award her substantial partial physical custody. She requests an award of shared physical custody with Mother, and Paternal Grandmother's partial physical custody time to remain the same. See 23 Pa.C.S.A. § 5322, set forth supra. Thus, it appears that Maternal Grandmother concedes that she and Mother cannot have a 50-50 split of all of the custodial time, and that she is seeking an award more akin to the 50-50 split that she shared with Mother under the April 29, 2016 interim order, with Paternal Grandmother's partial custodial time undisturbed.

The trial court stated as follows.

The dispute in this matter lies between Mother and Maternal Grandmother, a third party custodian.[11] It is well established that in a custody dispute between a third party and a parent, the burden of proof is not evenly balanced. In such cases, "the [parent has] a 'prima facie right to custody,' which will be forfeited only if 'convincing reasons' appear that the [children's] best interest[s] will be served by an award to the third party."[12] "Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the [biological parent's] side."[13] "What the judge must do, therefore, is first, hear all evidence relevant to the [children's] best interest[s], and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side."[14]

The Pennsylvania General Assembly recently codified the presumption favoring the parent, providing that "[in] any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence."[15] The [c]ourt evaluated the evidence in light of this presumption and awarded primary physical custody of the Children to Mother.

As required by the Domestic Relations Code, the [c]ourt reached its determination regarding the Children's best interests by considering each of the 16 custody factors delineated in 23 Pa.C.S. § 5328(a). While the [c]ourt found that two of the custody factors weighed in Maternal Grandmother's favor, the evidence on these factors was insufficient to overcome the presumption in Mother's favor, particularly in light of the [c]ourt's findings that three custody factors favored Mother and that 12 factors were either neutral between the two parties or were not applicable.

Maternal Grandmother's strongest evidence in favor of her request for primary custody was the evidence regarding Mother's struggles with substance abuse. These struggles have been longstanding, and the [c]ourt recognizes that it will not serve the Children's best interests for Mother to experience a significant relapse. However, the evidence demonstrated to the [c]ourt that Mother is succeeding at maintaining sobriety and at caring

for the Children while she does so. Case law demonstrates that in circumstances such as these, Mother's history need not cause her to lose custody of the Children.

The Superior Court's decision in Jordan v. Jackson, provided useful guidance to this [c]ourt.[16] In Jordan, the child's grandparents exercised custody of the child while the mother was struggling with a period of substance abuse and incarceration. In affirming the trial court's decision to award the mother primary custody, the Superior Court stated:

Admirably, it is clear that grandparents have provided a home and have provided emotionally for the child for a significant period of time while mother was unable to do so. . . . All evidence, however, indicates mother has been providing the same since shortly after she was released from jail. She is ready, willing, and able to provide a home, and to provide financially and emotionally for the child. The child has continued to do well academically while the parties have shared custody.[17]

The Jordan Court emphasized that while a parent's past substance abuse and criminal history, as well as a parent's rehabilitation, are very pertinent considerations, the focus of the case is still the current best interests of the children.[18] The child in Jordan had been cared for exclusively by the grandparents in excess of two years. The Jordan Court nevertheless found it within the trial court's discretion to apply the presumption in Mother's favor and award her primary custody. What Jordan demonstrates is that it is well within the [c]ourt's discretion to reach the conclusion reached here.

Maternal Grandmother emphasized the Children's educational needs and believes she is more likely to attend to these needs. The evidence, however, did not support this belief. Daughter is excelling in the first grade. Mother and Maternal Grandmother have been sharing custody for the entire school year. There is no indication that Mother is inattentive to Daughter's education. Daughter does not have issues with tardiness, absences, incomplete homework, or behavior. Maternal Grandmother made much of Mother's lack of in-person participation at school and Mother's choice not to use what appears to be a non-mandatory, supplemental web-based program. The [c]ourt sees these as legitimate parental choices

regarding a child who is succeeding, not an indication of flawed parenting.

Outside of Factor 4 (relating to stability) and Factor 14 (relating to substance abuse), the [c]ourt rated the custody factors in favor of Mother, neutral, or not applicable. On February 6, 2017, with all parties present, the [c]ourt discussed its finding concerning all the factors on the record and now incorporates those findings into this opinion.[19] Based on these findings, as well as the above discussion, the Superior Court should conclude that this [c]ourt properly applied the presumption in favor of Mother and properly exercised its discretion.

_____

[11] Paternal Grandmother is also a named party, but because no party sought to alter Paternal Grandmother's partial custody periods, the [c]ourt focuses on the dispute between Mother and Maternal Grandmother only.

[12] K.B. v. C.B.F., 833 A.2d 767, 771 (Pa. Super. 2003) (citing Charles v. Stehlik, 744 A.2d 1255 (Pa. 2000)).

[13] Id.

[14] McDonel v. Sohn, 762 A.2d 1101, 1107 (Pa. Super[.] 2000), citing Ellerbe v. Hooks, 416 A.2d 512, 513-514 (Pa. 1980), appeal denied, 566 Pa. 665, 782 A.2d 547 (Pa. 2001).

[15] 23 Pa.C.S. 5327(b).

[16] 876 A.2d 443 (Pa. Super. 2005).

[17] Id. at 452.

[18] Id. at 450.

[19] Tr. 4-14 (February 6, 2017).

Trial Court Opinion, 5/8/17, at 6-9 (footnotes in original).

Maternal Grandmother essentially contends that the trial court should have found that the evidence on behalf of herself, as a third party, was

- 17 -

weighty enough to bring the scale up to even, and then down on her side. Maternal Grandmother's Brief, at 17. In her first issue, Maternal Grandmother argues that the trial court erred as a matter of law and abused its discretion in failing to address the application of the sixteen (16) custody factors set forth in 23 Pa.C.S.A. § 5328. Id. at 12-18.

In her related fourth issue, Maternal Grandmother argues that the trial court erred and abused its discretion when it determined that various custody factors under section 5328 were not applicable. Specifically, Maternal Grandmother points to the trial court's oral disposition on February 6, 2017, and its May 8, 2017 opinion, wherein the trial court stated that section 5328(a)(2) and (2.1) is not applicable in this case. She asserts that the conclusion is erroneous, in light of Mother's most recent convictions for endangering welfare of children and driving under the influence, as well as Mother's prior criminal history, history of involvement with domestic abuse, and struggles with substance and alcohol abuse, and previous unsuccessful rehabilitation. Maternal Grandmother's Brief, at 18-21.

We first consider Maternal Grandmother's assertion that the trial court should have found pursuant to 23 Pa.C.S.A. § 5329 that Mother's criminal history involving endangering welfare of Children, 18 Pa.C.S.A. § 4304,

tipped the custody scale in Maternal Grandmother's favor.[3]    Maternal Grandmother's Brief, at 18, 22-23.   Maternal Grandmother ignores the fact that the trial court did consider Mother's history of substance and alcohol abuse, and the criminal offenses and history of incarceration.   Ultimately, the court determined that, despite Mother's past struggles, she did not commit the acts of abuse contemplated in section (a)(2) and (2.1).   The trial court also gave Mother's involvement with the child endangerment offense due consideration.   The weight assigned to Mother's history of child endangerment is within the trial court's discretion.   We will not disturb the weight that the trial court assigned to Mother's history under sections 5328(a)(2) and (2.1), and 5329.

Moreover, Maternal Grandmother argues that the factual scenario in the instant appeal is distinguishable from Jordan, upon which the trial court relied, as Mother failed to present evidence regarding her rehabilitation and improved capacity to parent.   Id. at 22.   Maternal Grandmother ignores the fact that, as a third-party to this custody matter against a parent, she had the burden of proof, not Mother.   K.B., 833 A.2d at 771.

_____

[3] Section 5329 provides that, where a party seeks any form of custody, the court shall consider whether the party or member of that party's household has been convicted of or has pleaded guilty or no contest to any listed offenses, which include endangering welfare of children, 18 Pa.C.S.A. § 4304, and determine that the party does not pose a threat of harm to the child before making any order of custody to that party.

Moreover, with regard to her related fifth issue, Maternal Grandmother argues that the evidence regarding factors 5328(a)(3), (6), (9), (10), and (13), does not support the trial court's conclusions. Maternal Grandmother argues that the evidence clearly revealed that she has been caring for the Children on a full-time basis in a home she owns, and that she enrolled the Children in school, and continues to be the only custodial party active in their schooling (factors 5328(a)(3) and (10)); she offers a more stable living environment than Mother (factor 5328(a)(9)); she tends to the Children's daily physical, emotional, developmental, educational, and special needs, (factor 5328(a)(10)); and she is the party who is more likely to encourage and permit continued and frequent contact (factor 5328(a)(13)). See Maternal Grandmother's Brief at ii, 2-3, 23-26, and 27-30. Additionally, Maternal Grandmother contends that both parties support the Children's relationship with their paternal minor, female sibling, L.H. Id. at 26-27. Again, Maternal Grandmother ignores the trial court's February 6, 2017 oral explanation of its weighing of the various best interest factors against the competent evidence of record. See N.T., 2/6/17, at 4-14.

In its May 8, 2017 opinion, the trial court stated as follows.

1. The [c]ourt addressed the application of the 16 custody factors set forth in 23 Pa.C.S. § 5328 on the record with all parties present.

In Issue 1, Maternal Grandmother claims the [c]ourt failed to address the application of the 16 custody factors set forth in 23 Pa.C.S. § 5328.[20] When awarding any form of custody, the Court must consider the best interest of the children.[21] 23

Pa.C.S. § 5328(a) requires the [c]ourt to consider 16 specifically enumerated factors in reaching this determination.[22]  Further, 23 Pa.C.S. § 5323(d) requires the [c]ourt to "delineate the reasons for its decision on the record in open court or in a written opinion or order."[23]  The Superior Court has held that merely listing the factors[24] or simply stating that the court considered the factors without further explanation[25] are both insufficient under the statute.

On February 6, 2017, with all parties present, the [c]ourt announced its decision on the record in open court and explained its findings with regard to each individual custody factor.[26]  The Superior Court should reject Maternal Grandmother's Issue 1 because the record clearly shows the [c]ourt addressed the application of the 16 custody factors listed in § 5328(a) in making its decision.

<u>2. The [c]ourt considered all custody factors when determining the best interests of the Children.</u>

In Issue 4, Maternal Grandmother claims the [c]ourt ignored the best interests of the Children when determining various custody factors were "not applicable."[27]  The Superior Court should reject Maternal Grandmother's Issue 4 because the [c]ourt considered the evidence presented relating to all custody factors when determining the Children's best interests.  The [c]ourt indeed identified certain factors as "not applicable" to the [c]ourt's determination of the Children's best interests.  The [c]ourt reached this conclusion based on consideration of the evidence presented, and the record supports the [c]ourt's conclusion.

In relation to Factor 2 (present and past abuse committed by a party), the [c]ourt found that this factor was not applicable in this case.  No party presented any evidence concerning present or past abuse committed by a party or a member of the party's household.[28]  Likewise, in relation to Factor 2.1 (whether the child is the subject of an indicated or founded report of child abuse), no party presented evidence of any indicated or founded reports of child abuse.[29]  The [c]ourt also found Factor 7 (the well-reasoned preference of the Children), not to be applicable in this case because of the Children's ages.  At the time of trial, Daughter was six and Son was three.[30]

The [c]ourt also found Factor 8 (the attempts of a party to turn the child against the other party) not to be an applicable factor in its decision. Upon review of the admissible evidence,[31] the [c]ourt was not persuaded that either party was actively trying to turn the Children against another party. Both parties testified as to some negative things the Children may say. The [c]ourt believes that such comments are likely the result of the Children's awareness of the tension between the parties, not the result of an active effort to turn the Children against another party. Consequently, this factor did not weigh in favor of or against either party.

Finally, the [c]ourt also noted that Factor 15 (the mental and physical condition of a party or a member of a party's household), was not applicable in its decision making. In noting this, the [c]ourt stated that it recognized Mother's history of drug and alcohol abuse, but had already fully discussed this issue under Factor 14 (history of drug or alcohol abuse). There was no evidence presented to persuade the [c]ourt that a party or member of a party's household has any other mental or physical health conditions that were not addressed under Factor 14.

### 3. Maternal Grandmother did not overcome the presumption in favor of Mother by proving that the Children's best interest would be served by awarding Maternal Grandmother primary custody.

In Issue 5, Maternal Grandmother claims the [c]ourt erred in awarding Mother primary physical custody of the Children.[32] The [c]ourt found three custody factors weighed in favor of Mother, two weighed in favor of Maternal Grandmother, and 12 were neutral or not applicable. As discussed above, because Maternal Grandmother is a third party custodian, there is a presumption in favor of Mother.

Maternal Grandmother first claims the evidence clearly revealed that she has been caring for the Children on a "full-time" basis in her home that she owns [(factor 5328(a)(3))].[33] This is simply incorrect. As discussed in Section II, the Children have resided with Mother for most of their lives. There have been only brief periods in the Children's lives where Maternal Grandmother cared for them on a full-time basis.

- 22 -

Maternal Grandmother also claims that the evidence clearly revealed that she enrolled and continues to be the only custodial adult active in their schooling [(factor 5328(a)(3) and (10)].[34] Again, the evidence does not support this assertion. Daughter has maintained good grades, a good attendance record, and good behavior while being in Mother's custody every other week. No current evaluation identifies Son as having special needs that Mother is ignoring. While Maternal Grandmother may not agree with Mother's choices concerning the Children's education, the evidence revealed Mother's choices as legitimate parental decisions.

Maternal Grandmother next claims that the evidence revealed she offers a more stable living environment [(factor 5328(a)(9))].[35] As discussed above and on the record, the [c]ourt did find that Factor 4 weighed in favor of Maternal Grandmother.[36]

Maternal Grandmother finally claims that the evidence clearly revealed that she is the party more likely to encourage and permit continued and frequent contact [(factor 5328(a)(13))].[37] Again, the evidence presented directly contradicts this assertion. The record is replete with evidence that Maternal Grandmother does not communicate with the other parties. Maternal Grandmother did not provide Mother or Paternal Grandmother and her family with a copy of Daughter's softball schedule or any information that would allow them to attend her games.[38] Maternal Grandmother did not allow the Children to spend any time with Mother or Paternal Grandmother on Thanksgiving or Christmas.[39] Paternal relatives try to speak to Maternal Grandmother during custody exchanges, but Maternal Grandmother will not greet or otherwise acknowledge them.[40] Maternal Grandmother also testified that she does not respond to Mother at custody exchanges.[41] While Maternal Grandmother has always followed the [c]ourt's custody orders, the [c]ourt could not find she is the party more likely to encourage and permit continued and frequent contact when she herself refuses even to speak to the other parties in front of the Children.

_____

[20] See Concise Statements of Matters Complained of on Appeal, ¶ 1.

[21] 23 Pa.C.S. § 5238(a).

[22] Id.

[23] 23 Pa.C.S. § 5323(d).

[24] M.P. v. M.P., 4 A.3d 950, 955-956 (Pa. Super. 2012).

[25] C.B. v. J.B., 65 A.3d 946, 950-951 (Pa. Super. 2013).

[26] Tr. 4-14 (February 6, 2017).

[27] See Concise Statements of Matters Complained of on Appeal, ¶ 4.

[28] The [c]ourt recognizes that Mother moved in with Maternal Grandmother following a domestic dispute with Father. Mother was charged with domestic simple assault, but these charges were then withdrawn.

[29] The [c]ourt is well aware that Mother pled guilty to two counts of Endangering Welfare of Children in relation to her May 19, 2014 and January 13, 2015 arrests. See Maternal Grandmother's Exhibit 8. The [c]ourt is also aware that Allegheny County Office of Children, Youth and Families ("CYF") twice received referrals for the family. See Court's Exhibit A, Stipulations 14 and 15.

[30] No party sought to call the Children as witnesses.

[31] Because two of the three parties were proceeding pro se, the [c]ourt warned the parties that while there may not be objections, the [c]ourt would disregard any inadmissible hearsay.

[32] See Concise Statements of Matters Complained of on Appeal, ¶ 5.

[33] Id.

[34] Id.

[35] Id.

- 24 -

[36] Tr. 6-7 (February 6, 2017).

[37] See Concise Statements of Matters Complained of on Appeal, 15.

[38] Tr. 64-66 (January 30, 2017). Mother, on the other hand, testified that Maternal Grandparents, as well as anyone that wished to support the Children were welcome to attend their activities and events. She testified that both sides of the family would be provided with schedules and information concerning activities. Tr. 367-368 (January 30, 2017).

[39] Tr. 159 (January 30, 2017).

[40] Tr. 211-212 (January 30, 2017); Tr. 234 (January 30, 2017).

[41] Tr. 150 (January 30, 2017).

Trial Court Opinion, 5/8/17, at 9-13 (footnotes in original).

After a careful review of the record in this matter, we find that the trial court's conclusions are not unreasonable as shown by the evidence of record. As stated above, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand, and we may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. C.R.F., 45 A.3d at 443. Here, we discern no error of law or abuse of the trial court's consideration of the section 5328(a) factors and its weighing process. Thus, we affirm the trial

court's custody determination on the basis of its discussion relating to Maternal Grandmother's issues 1, 4, and 5.[4]

Next, Maternal Grandmother and the trial court grouped Maternal Grandmother's second and third issues, regarding whether the trial court's February 13, 2017 final custody order lacked sufficient specificity, and whether the February 13, 2017 order was inconsistent with the order that was announced orally on February 6, 2017.[5] See Maternal Grandmother's

_____

[4] Further, we note that the trial court did not specifically address section 5328(a)(6) in its May 8, 2017 opinion. At the hearing on February 6, 2017, at which the trial court orally announced its disposition, however, the trial court stated that, with regard to factor 6, 23 Pa.C.S. § 5328(a)(6), the evidence weighed in favor of Mother as the party more likely to facilitate the Children's relationship with their paternal half-sibling, L.H. N.T., 2/6/17, at 7. The trial court found that Maternal Grandmother was less likely than Mother to spend time with the Children's paternal extended family. Id. Given the trial court's conclusions with regard to factor 13, 23 Pa.C.S.A. § 5328(13), based on the evidence concerning Maternal Grandmother's interaction with the Children's paternal relatives, we find its conclusion regarding section 5328(a)(6) supported by the competent evidence of record.

[5] Maternal Grandmother requests this Court to remand the February 13, 2017 order to the trial court for proper specificity to ensure its enforceability. See Maternal Grandmother's Brief, at 34. The trial court suggests that Maternal Grandmother has waived her second, third, sixth, and seventh issues for failure to specify them with clarity in her concise statement. See Trial Court Opinion, 5/8/17, at 13-16.

In Commonwealth v. Castillo, 585 Pa. 395, 888 A.2d 775 (2005), our Supreme Court "re-affirm[ed] the bright-line rule first set forth in [Commonwealth v. Lord, 553 Pa. 415, 719 A.2d 306 (1998)] that in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925. Any issues not raised
(Footnote Continued Next Page)

Brief, at i, 31-34. Maternal Grandmother asserts that four weekend dates listed in the final custody order for Maternal Grandmother's exercise of physical custody, February 17-19, 2017, March 17-19, 2017, April 28-30, 2017, and May 12-14, 2017, presented a direct conflict with Paternal Grandmother's weekend partial custodial time. See Maternal Grandmother's Brief, at 31-34, citing Trial Court Order, 2/13/17, Section II, B.2.a-d. Maternal Grandmother alleges that, when her counsel contacted the trial court about the order, counsel was told that the trial court had been receiving phone calls about the order. Id. at 34 n.20. Maternal Grandmother cites Section 5323(f) of the Act and Pennsylvania Rule of Civil Procedure ("Pa.R.C.P") 1915.10(b) in support of her argument. Maternal Grandmother also complains that the caption section of the final order states Interim Order of Court, whereas the Order below is titled Final Order of Court.

(Footnote Continued) ——————————

in a Pa.R.A.P. 1925(b) statement will be deemed waived." Castillo, 585 Pa. at 403, 888 A.2d at 780 (internal quotations and citations omitted). Cf. Commonwealth v. LaBoy, 936 A.2d 1058, 1059-1060 (Pa. Super. 2007) (finding the appellant's sufficiency of the evidence issue raised in his concise statement had adequate specificity for appellate review).

We find Maternal Grandmother's concise statement sufficiently specific to encompass her arguments and requests in issues 2 and 3. Thus, we reject the trial court's suggestion that these issues are waived for lack of specificity. We appreciate the trial court's willingness to clarify its order should this court not find the issues waived and decide to remand the matter. See Trial Court Opinion, 5/8/17, at 16.

Section 5323(f) of the Act provides, "In awarding custody, the court shall specify the terms and conditions of the award in sufficient detail to enable a party to enforce the court order through law enforcement authorities." 23 Pa.C.S.A. § 5323(f). Similarly, Pa.R.C.P. 1915.10(b) provides with regard to custody orders, "[t]he terms of the order shall be sufficiently specific to enforce the order."

Maternal Grandmother's request for a correction of the trial court's caption of its undisputedly final order is more appropriately directed to the trial court. It appears that the trial court made a clerical error in copying the caption of "Interim Order of Court" from a previous interim order in the case. Likewise, the schedule under Section II.B.2 of the final custody order, which set forth Maternal Grandmother's partial custodial time, so that her scheduled custodial days and times will not interfere with any particular days and times during which Paternal Grandmother is scheduled to exercise her partial custody time, is a matter for the trial court to clarify. As we are not a fact-finding court, we will remand the final custody order to the trial court to clarify its caption of the February 13, 2017 final order of court, and to clarify the custody schedule set forth in section II.B.2.a-d so that the order is more readily discernible and enforceable, and that there will be no overlapping custodial times, if such time and date conflicts do exist.

Finally, Maternal Grandmother and the trial court also grouped Maternal Grandmother's sixth and seventh issues for purposes of discussion.

In her sixth issue, Maternal Grandmother argues that the trial court erred as a matter of law and abused its discretion when it ensured Mother, who appeared at the custody evidentiary hearing pro se, had an opportunity to have her matters heard by affording Mother "more than reasonable accommodations," in violation of Code of Judicial Conduct (the "Code") 2.2. Maternal Grandmother's Brief, at ii, 35-37. Rule 2.2 provides, "[a] judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially." Maternal Grandmother acknowledges Comment 4 to Rule 2.2, which provides, "It is not a violation of this Rule for a judge to make reasonable accommodations to ensure pro se litigants the opportunity to have their matters heard fairly and impartially." Maternal Grandmother's Brief, at 35. Maternal Grandmother argues, however, that the trial court acted with "more than reasonable accommodations in that the trial court acted as both the trier of fact and Mother's attorney." Id. at 36.

The trial court explained its conduct of the evidentiary hearing as follows:

> Maternal Grandmother does not specify what accommodations were "more than reasonable" and the record does not contain any objections concerning accommodations. Based on the record, the [c]ourt's best guess is that Maternal Grandmother is referring to the [c]ourt's questioning of Mother's witnesses. Because Mother chose to proceed pro se, the [c]ourt felt it necessary to engage in more questioning of Mother's witnesses than it typically would in a case where all parties were represented.
>
> A similar issue arose in Jordan v. Jackson.[59] In Jordan, the mother proceeded pro se in a custody case and the

grandparents challenged the trial court's direct examination of mother's witnesses. The Superior Court rejected the grandparents' argument, noting that "the trial court had the duty to question the witnesses as it did in order to extract/clarify information it needed to make a decision as to the best interests of the child."[60] The Superior Court also noted:

> [a] trial judge has the right if not the duty to interrogate witnesses in order to clarify a disputed issue or vague evidence. Unless the party can establish the judge's questions constituted an abuse of discretion, resulting in discernible prejudice, capricious disbelief, or prejudgment, a new trial will not be granted.[61]

Here, Mother called three witnesses besides herself - two of the Children's paternal aunts and the Children's paternal half-sister.[62] The [c]ourt asked these three witnesses questions about the Children and the parties in order to extract information necessary to reach a decision in the Children's best interests. Maternal Grandmother's Issue 6 should be dismissed if this is the "more than reasonable" accommodation to which Maternal Grandmother refers.

_____

[59] 876 A.2d 443 (Pa. Super 2005).

[60] Id. at 454.

[61] Id. at 453-454 (quoting Mansour v. Linganna, 787 A.2d 443, 446 (Pa. Super. 2001)).

[62] Paternal Grandmother and Mother also testified. The [c]ourt similarly engaged in questioning of Paternal Grandmother and Mother to order to determine the best interests of the Children.

Trial Court Opinion, 5/8/17, at 16-17 (footnotes in original).

For the reasons expressed by the trial court in its opinion, we discern no merit to Maternal Grandmother's argument that the trial court was biased against her, and violated Rule 2.2 of the Code.

In her seventh issue, Maternal Grandmother contends that the trial court acted with impropriety, bias, and/or prejudice in favor of Mother in conducting the evidentiary hearing. Id. at ii, 37-38. Specifically, she alleges that the trial court presided over the hearing so as to combine its fact-finding responsibility with serving as counsel for Mother. Id. at 36-37. Maternal Grandmother alleges, "the trial court had prejudged or adjudicated this case long prior to trial and was simply rushing through Maternal Grandmother's rights to presentment of the facts regarding the custody factors." Id. In support of her argument, Maternal Grandmother cites Rule 1.2 of the Code, which provides, "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Maternal Grandmother also cites Comment 5 to Rule 1.2 of the Code for the following: "[t]he test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge violated this Code or engaged in other conduct that reflects adversely on the judge's honesty, impartiality, temperament, or fitness to serve as a judge." We find no evidence suggesting such conduct on the part of the trial court here.

Maternal Grandmother also contends that the trial court violated Rule 2.3(B) of the Code, citing that rule for the proposition that a trial court's

words and or conduct are scrutinized for bias or prejudice. Maternal Grandmother's Brief, at 36.

Maternal Grandmother has taken the guidance set forth in Rule 2.3(B) out of context. The rule provides:

> (B) A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender identity or expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

Pa. Code of Judicial Conduct, Rule 2.3.

For the reasons expressed by the trial court in its opinion, supra, we discern no merit to Maternal Grandmother's argument that the trial court was biased against her, or that the court violated Rules 1.2 and 2.3(B) of the Code. Clearly, the trial court considered Child's best interests in fashioning its custody award and final custody order; however, its schedule and caption bear clarification. C.R.F., 45 A.3d at 443. The trial court properly considered the presumption set forth in section 5327(b) of the Act, the sixteen custody/best interest factors set forth in section 5328(a) of the Act, and the definitions of the various forms of custody under the Act. Id.

Accordingly, we affirm the trial court's February 13, 2017 final custody order on appeal, in part, to the extent of the custody award made therein. We remand the custody order, in part, however, with instructions to the trial court to clarify the caption of the February 13, 2017 final order of court, and

to clarify the custody schedule set forth in section II.B.2.a-d so that the order is more readily discernible and enforceable

Order affirmed in part, and remanded in part, with instructions. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  11/21/2017